NICHOLAS GIBERT administrator with the will annexed of
JOSEPH L. DULARY, and MARY ELIZABETH LAMUR
countess d'Aitz,

v.

ROSWELL L. COLT.

The writ of ne exeat, is not here, a prerogative writ.

In a proper case, this writ is of right, and not discretionary.

Citizens of other states and foreigners are liable to it, while they are in this state.

The court determines the amount in which the defendant shall be held to bail; and the
sheriff must take a bond in the amount directed, as the penal sum.

1825.
1st June.

*Ne exeat.*

MOTION for a writ of ne exeat, founded on petition and
affidavit. A bill had been filed and an answer put in. It
appeared, that Dulary died in 1807, leaving a will, by which
he made his daughter Madame d'Aitz, sole legatee of his
personal estate, and appointed her and the late Jacob Le
Roy, his executors; the latter of whom alone, proved the
will. Le Roy, being at the time, engaged in commercial
business, in partnership with the defendant Colt, under the
firm of Jacob Le Roy and son, the funds of the Dulary es-
tate were carried by the executor, into the accounts of the
firm; they charging themselves from time to time, in their
books, with interest thereon. The account in the books, was
kept in the following form. "Joseph L. Dulary in account
"with Jacob Le Roy and son." On the first day of Janua-
ry 1814, a balance was stated in the books, in favor of Du-
lary, of eleven thousand, nine hundred and thirty eight dol-
lars and seventy cents. On the twenty fifth day of May fol-
lowing, Le Roy drew from the firm, three thousand four
hundred and seventy eight dollars and sixty eight cents, part
of this balance, and purchased with it, for account of Dula-
ry's estate, four thousand dollars of the six per cent stock of
the united states. Dulary's account in the books of the firm
was charged with the amount of the investment; and the
certificate was taken in the name of Dulary; who was also
subsequently credited with the dividends. On the thirteenth
day of February 1815, Le Roy died insolvent, leaving Colt
his surviving partner, who on the eighteenth day of the same
month, five days after Le Roy's death, transferred the stock

1825.

GIBERT
v.
COLT.

to Augustin H. Lawrence and company, signing to the transfer, " Jacob Le Roy and son administrators," meaning administrators of Dulary. In his answer, Colt alleged, that Le Roy in December previous to his death, had directed, that the stock investment should be recredited, and that Dulary's account with the firm should be closed, and the balance carried to his Le Roy's private account; which he said, was accordingly done, and the following entries made in the books: " Dr. J. L. Dulary Decr. 3d. 14. Jacob Le Roy " transferred to his private account with interest from 1st " Jan. last. $11,938 70. Cr. by stock of U. S. for this " sum wrong charged him, the stock being ours 3478 67." These entries were not in Le Roy's, but in Colt's hand writing. In consequence of the executor's death, letters of administration of the estate of Dulary, with the will annexed, were some time afterwards in 1822, granted to the complainant Gibert. The petitioners swore, that no payment had ever been made to their knowledge or belief, and that the allegation that these entries were made in Le Roy's life, and by his direction, was, as they believed, without foundation. The defendant in his answer, averred, that in consequence of the reverse entry before mentioned, he believed, when he made the transfer of the stock, that it equitably belonged to the firm, of which he was the surviving partner; and that he had therefore, a right to dispose of it; but he is now advised and believes, that he was wrong in making the said transfer, in the name of Jacob Le Roy and son administrators. He nevertheless, insisted, that he had a right to retain as well the avails of the stock, as the residue of the balance before mentioned, on the ground of the alleged entries before referred to. The petitioners on their part, denied, that these entries, according to their belief, were made in Le Roy's life; and averred, that the defendant by reason of the matters stated in the bill, was indebted to them, as they were advised and believed, in the balance before mentioned; which including interest and the proceeds of the stock, amounted to twenty thousand dollars and upwards; the recovery of which, they alleged, would be endangered, if the defendant were permitted, as he intended, to quit this state and go to Balti-

more. It appeared, that Baltimore was his place of residence.

The principal questions raised on this motion, were;

1. Whether a citizen and a resident of another state, who is transiently visiting this state, is liable to the writ of ne exeat: and 2. Whether the statement in the complainants' affidavit of a debt due to them, was sufficiently positive.

MR. ROOSEVELT for the petitioners.

This writ is no longer considered, in the light of a high prerogative process. It is in matters of equitable cognizance, precisely the same as a capias at common law. In the courts of law, no distinction between residents and non residents, was ever recognized. And it is the policy of courts of equity founded upon the best reason, to adopt as far as may be, the analogies of legal proceedings, where the question turns upon principle. Otherwise, our jurisprudence would be liable to the reproach of "alia lex Romæ, alia Athenis." With respect to authorities: in Howden v. Rogers 1 Ves. & B. 129, a motion was made to discharge a ne exeat, on the ground that the defendant was a resident of Ireland, and was only on a temporary visit to England, at the time of his arrest. "The "utmost that I can do for the defendants' relief," said the chancellor, "is to discharge him on giving security to abide "the decree." Upon that, the practice is so settled that "I have no option." Dick v. Levinton 1 Ves. & B. 372, was the case of a captain of an east indiaman, arrested just on the eve of sailing, after he had been in England several months. The writ was discharged on the ground of surprise, upon condition however, of paying into court the sum mentioned in the answer as due. Woodward v. Shatzell 3 Johns. ch. 412, is a decision of the late chancellor; and is precisely in point.

MR. D. B. OGDEN and MR. JONES for the defendant.

They insisted, that the defendant being a resident of Baltimore, could not be stopped here, while on a mere transient visit. If the writ were allowable in the case of a foreigner, which they denied, still, it did not apply to the case of a citizen of another state, under the same general government, returning to his home. The recovery could not be endanger-

ed, by permitting him to depart. This was a high prerogative power, and ought to be exercised with great caution. There was no pretence of insolvency; it was the mere inconvenience of resorting to another forum. Again, the affidavit goes merely to the complainants' belief of the indebtedness. It should be positive, especially, when it is considered that the security to be given, unlike the bail at law, is not for the person, but to abide the decree. 7 Johns. ch. 189. 10 Ves. 164. 1 P. W. 163. But we have a right also, to rely on the answer, which is to be taken as true; and the answer states, that the account was closed, so far as the partnership was concerned. The complainants must look to Le Roy's representatives. The defendant with respect to the stock, had a right to consider it as equitably his. The charge for its purchase, had been as he says, reversed in the books. The manner of transferring it, we admit was wrong; but we insist, that the defendant was entitled to it. Had it not been transferred as it was, the defendant might on a bill filed by him, have compelled Dulary's representatives to transfer it, the charge having been reversed.

THE COURT. The English idea, that a ne exeat is a prerogative writ, is inapplicable, here. This writ has now become an ordinary process of courts of equity; and it is as much a writ of right, as any other process used in the administration of justice. It must be granted, when a proper case is presented.

The defendant is a citizen and a resident of another state; but he is nevertheless, liable to this writ. Our own citizens, those of other states and foreigners are all equally subject to our laws, and to the process of our courts, while they are in this state. There can be no reason, that the writ of ne exeat should be an exception to this principle; and it has been often used to arrest citizens of other states, in this state. The only difficulty in this case, arises from the language of the affidavit, concerning the debt. Is the affidavit sufficiently positive, according to the precedents?

MR. ROOSEVELT in reply, as to this point. The complainants sue in a representative character. It is impossible therefore, that they should swear with greater certainty, than

1825.

GIBERT
v.
COLT.

they have done : and if the rule contended for on the other side, is to be adopted, it will virtually exclude executors and administrators from the benefit of this writ, in all cases. Besides, the answer itself admits enough to warrant the issuing of the writ. It admits, that the debt once existed, but sets up matter of avoidance. Such matter is never inquired into on such applications, in courts of law ; and there is no reason for the adoption of a different course in equity. " Even" says Tidd 165, " an affidavit of the plaintiff's confession, " that the defendant owes him nothing, will not be received." The court will not try the cause, on this motion. At least, a ne exeat ought to be awarded, to the extent of the stock and dividends.

3d June.

THE COURT. According to the adjudged cases, a positive affidavit of an existing just debt, is required as a foundation for the writ of ne exeat ; and this rule has been observed, with great strictness. Pursuing these decisions, I am of opinion, that the affidavit now before the court, is not sufficiently positive. But the answer of this defendant is also before the court ; and in deciding this question, the court may and ought to take the answer into consideration. From the answer, it seems sufficiently clear, that the complainants are entitled to the stock and the dividends. The residue of the demand is not, upon the answer, sufficiently free from difficulty. I shall direct, the writ to be issued for an amount equal to the stock and the dividends. Let it be marked for seven thousand dollars.

8th June.

The writ having been issued and the defendant having been arrested, the sheriff now applied to the court, for instruction concerning the amount in which a bond should be taken. The complainants' counsel contended, that the penalty of the bond should be double the sum mentioned in the writ : and the defendant's counsel insisted, that the penalty of the bond should be the sum which had been ordered by the court, and no more.

THE COURT. The practice of this court upon this point, does not appear to have been settled. The sum in which the defendant is to be held to bail, upon a writ of ne exeat, is

assessed by the court itself; and the court directs a sum suf- ficient to cover not only the existing debt, but also, a reason- able amount of future interest, having regard to the proba- ble duration of the suit. If this sum were doubled or enlar- ged by the sheriff, it might be very oppressive to the defend- ant. The sheriff must take a bond in the sum directed by the court, without any addition.

A bond was accordingly taken to the sheriff, in the penal- ty of seven thousand dollars, with condition that the defend- ant should not depart from the state, without leave of the court.

A few days afterwards, the defendant brought the amount into court; and by consent, the writ and the bond were dis- charged.